# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JEANINE J. ROBERTS,**

    **Plaintiff,**

v.                        Case No. 18-CV-773

**ANDREW M. SAUL**[1]**,**
**Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

### PROCEDURAL HISTORY

Plaintiff Jeanine Roberts alleges that she has been disabled since December 3, 2013, due to postural orthostatic tachycardia syndrome (POTS), syncope, supraventricular tachycardia, syringomelia, degenerative disc disease, chronic obstructive pulmonary disease (COPD), fibromyalgia, and migraines. (Tr. 96, 106.) In December 2013 she applied for disability insurance benefits. (Tr. 199-200). After her application was denied initially (Tr. 95-105) and upon reconsideration (Tr. 106-22), a hearing was held before an administrative law judge (ALJ) on March 22, 2017 (Tr. 34-66). On May 11, 2017, the ALJ

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted as the named defendant in this action.

issued a written decision concluding Roberts was not disabled. (Tr. 13-21.) The Appeals Council denied Roberts's request for review on April 9, 2018. (Tr. 1-3.) This action followed. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 2, 8), and this matter is now ready for resolution.

## ALJ'S DECISION

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. The ALJ found that Roberts "did not engage in substantial gainful activity during the period from her alleged onset date of December 3, 2013 through her date last insured of December 31, 2013." (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Roberts had the following severe impairments: "postural orthostatic tachycardia syndrome (POTS) and chronic obstructive pulmonary disease (COPD)." (Tr. 15.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d),

2

416.1526, 416.920(d), and 416.926) (called "The Listings"). If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month duration requirement, 20 C.F.R. § 416.909, the claimant is disabled. If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Roberts "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." (Tr. 16.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), "which is [the claimant's] 'ability to do physical and mental work activities on a regular basis despite limitations from her impairments.'" *Ghiselli v. Colvin*, 837 F.3d 771, 774 (7th Cir. 2016) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p. In other words, the RFC determination is a "function by function" assessment of the claimant's maximum work capability. *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Roberts had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except as limited by the following. [Roberts] could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl. [Roberts] could tolerate occasional exposure to and/or work around extreme cold and heat, wetness, humidity, fumes, gases, and other pulmonary irritants. She could not work around hazards such as moving machinery or unprotected heights. [Roberts] could not do any commercial driving.

3

(Tr. 16.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant had the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1526, 416.965. The ALJ concluded that Roberts "was capable of performing [her] past relevant work as a secretary. The work did not require the performance of work-related activities precluded by [Roberts's] [RFC]." (Tr. 19.)

Although the ALJ found that Roberts could have returned to her past relevant work as a secretary, she made "alternative findings for step five of the sequential evaluation process." (Tr. 19.) The fifth step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. At this step the ALJ concluded that, "considering [Roberts's] age, education, work experience, and [RFC], there are jobs that existed in significant numbers in the national economy that [she] also could have performed." (*Id.*) In reaching that conclusion, the ALJ relied on testimony from a vocational expert, who testified that a hypothetical individual of Roberts's age, education, work experience, and RFC would have been able to perform the requirements of occupations such as appointment clerk, sorter, and document archiver. (Tr. 20.)

After finding that Roberts could have performed work in the national economy, the ALJ concluded that she was not under a disability "at any time from December 3, 2013, the alleged onset date, through December 31, 2013, the date last insured." (Tr. 20.)

**STANDARD OF REVIEW**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *LD.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**ANALYSIS**

Roberts argues that "[t]he ALJ, in considering the two Holter monitor tests … overlooked the objective finding at ([Tr.] 363)." (ECF No. 11 at 4.) Transcript page 363 is a progress note from an appointment Roberts had with Lakshmi Deep, M.D., in October

5

2012 (more than a year prior to Roberts's alleged onset date of December 3, 2013), which states in relevant part:

> The patient is a 46-year-old female who comes in complaining of having sinus infection. Was treated for infection. Was still having dizzy spells. …. *Had a Holter monitor done which shows 3 occasions she has had dizziness which correlates with the sinus tachycardia*. Walking up and down the stairs she has been feeling dizzy. Finished her prednisone and antibiotics. She has had Holter done, echocardiogram done. MRI of the brain shows sinusitis. No other complaints. No headaches or blurred vision currently.

(Tr. 363.) (Emphasis added.) Roberts contends that "[t]he ALJ was required to make further inquiry as to the daily dizziness being a contributing factor to inability to stay on task, the required 85-90% of the time." (ECF No. 11 at 4-5.)

As the Commissioner points out, Roberts "fails to explain how this older evidence reflects her condition as of December 2013." (ECF No. 17 at 5.) Roberts fails to cite to any objective medical tests or opinion evidence that demonstrate that she experienced these dizziness spells around or after her alleged onset date of December 3, 2013.

The ALJ correctly found that "the medical evidence of record contains essentially normal physical examinations and generally unremarkable other testing during and close to the period at issue," explaining:

> December 2013 treatment notes indicate that [Roberts] had been diagnosed with POTS that was associated with episodes of gazing off or staring into space and sometimes passing out; however, the extensive work up to that point had been negative [(Tr. 351)]. Later that month at a cardiovascular follow up appointment, it was noted that despite some episodes of her heart beating quickly, [Roberts's] heart rate had clearly improved after starting a low-dose beta-blocker [(Tr. 433)]. Notes from the associated physical examination indicate that [Roberts] was alert and oriented with a normal

6

> affect, and no obvious focal findings were observed [(*Id.*)]. During an electrophysiology consultation less than a week later, [Roberts] was again observed to be grossly intact neurologically, and she had a stable gait [(Tr. 430)]. [Roberts] then wore an event monitor for 21 days beginning December 20, 2013, and there were no VT, SVT, atrial fibrillation, atrial flutter, significant brandycardia, or pauses noted [(Tr. 398)]. The results from a tilt table test done in February 2014 were also negative [(Tr. 345)].

(Tr. 17.) In making that finding, the ALJ did not rely on her own reading of Roberts's treatment records. She gave "great weight" to the opinion of impartial medical expert Ashok G. Jilhewar, M.D., who reviewed Roberts's medical treatment records and opined that Roberts was limited to sedentary-level work with various non-exertional limitations (Tr. 53), and "some weight" to the opinions of state-agency medical consultants Mina Khorshidi, M.D., and Andrew Przybyla, M.D., both of whom opined that Roberts "was able to perform a range of sedentary exertional level work that included postural and environmental limitations" (Tr. 102-03, 117-19). (Tr. 18.) Given the absence of any objective medical evidence suggesting that Roberts was still experiencing dizzy spells in December 2013, the ALJ did not err in not discussing the October 2012 progress note. *See Green v. Saul*, No. 19-1192, 2019 WL 3297472, at *4 (7th Cir. July 23, 2019) ("[A]n ALJ need not discuss every piece of evidence in the record."); *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) ("There is no presumption of truthfulness for a claimant's subjective complaints; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions.").

Roberts also argues that the ALJ failed to consider the side effects of her medications. (ECF No. 11 at 5.) However, the ALJ gave great weight to the opinion of Dr. Jilhewar, who testified that the only medication on Roberts's list of medications that could cause significant side effects was 25 milligrams of Meclizine taken "three times a day on a day-in-and day-out" basis. (Tr. 54-58.) There is no evidence in the record that Roberts was taking Meclizine three times a day, every day. As such, the ALJ did not err by not considering the side effects of Roberts's medication.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is affirmed and this action is dismissed. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 31st day of July, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge